Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISAAC CERVANTES,<br><br>Defendant. | NO. CR23-5085-DGE-13<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Defendant ISAAC CERVANTES appears before this Court for sentencing in the above-captioned case pursuant to his guilty plea on February 21, 2024, to Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Presentence Report (PSR) at ¶ 2; Plea Agreement at ¶ 1.) The United States respectfully recommends the Court impose a sentence of 120 months' imprisonment to be followed by a four-year term of supervised release, and a $100 special assessment. The government believes this sentence, which includes a significant downward variance from the applicable sentencing guidelines range, represents the appropriate sentence, balancing mitigating and aggravating factors as required under 18 U.S.C. § 3553.

//

United States' Sentencing Memorandum - 1
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# I. BACKGROUND

## A. Offense Conduct

### 1. Summary of Investigation

In March 2023, the Federal Bureau of Investigation, the Drug Enforcement Administration, and other federal and local law enforcement agencies concluded a two-year investigation into drug trafficking initially focusing on two prison gangs, the Aryan Family and Omerta, which are predominately while prison gangs that have a presence both inside and out of prison facilities. (PSR ¶ 33.) These gangs engage in drug trafficking as one of their primary purposes, and the investigation identified numerous individuals affiliated with the gangs who were determined to have been involved in drug trafficking and money laundering, including the distribution of multi-pound quantities of methamphetamine, fentanyl, heroin, and cocaine throughout western Washington and other states. *Id.* The investigative team devoted substantial resources to identifying the organizational structure of the drug trafficking organization (DTO), including multiple rounds of court-authorized interceptions of wire and electronic communications, surveillance, the use of confidential informants, search warrants, and other investigative techniques. (PSR ¶¶ 34, 36.)

Through this investigation, agents learned of three distribution cells that were working together in what investigators came to know as the Aryan Family/Omerta DTO. One of the cells was led by co-defendant Bryson Gill. (PSR ¶ 35.) Sources of supply of narcotics located outside the Western District of Washington were also identified, including in Arizona. (*Id.*) Over the course of the investigation, agents seized from members of the DTO an estimated 830,000 fentanyl pills, multiple pounds of fentanyl powder, 223 pounds of methamphetamine, cocaine, heroin, marijuana, $338,000 of suspected drug proceeds, and 48 firearms. (PSR ¶ 37.) In addition, during the coordinated arrests of the DTO members in March 2023, law enforcement seized approximately 26 pounds of fentanyl in pill and powder form, 22 pounds of methamphetamine,

United States' Sentencing Memorandum - 2
*United States v. Cervantes*, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

six pounds of heroin, more than $330,000 of suspected drug proceeds, and 177 additional firearms. (PSR ¶ 38.)

### 2. Cervantes's Role in the DTO

Cervantes directly assisted the leader of one of the drug distribution cells, Bryson Gill. Working with Gill and co-defendants Michael Slocumb and Michael Warren, Cervantes transported fentanyl, methamphetamine, and other drugs into the state of Washington from Arizona, stored and re-sold the drugs, and assisted in their fentanyl pill-pressing operation. Cervantes began his involvement in the conspiracy as early as July 2021, and it extended until his arrest in March 2023. (Plea Agreement ¶ 8; PSR ¶ 39.)

On July 1, 2021, using a BMW registered to and belonging to Gill, Cervantes attempted to transport approximately 50,000 counterfeit "M30" Oxycodone pills containing fentanyl into Washington. Local law enforcement stopped Cervantes in Oregon and found the five kilograms of pills, along with four semi-automatic pistols. Cervantes drove the vehicle as part of the criminal conspiracy to distribute drugs for profit in the Western District of Washington. (Plea Agreement ¶ 8.b.; PSR ¶ 40.)



*Fentanyl pills transported by Cervantes on July 1, 2021*

United States' Sentencing Memorandum - 3
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



*Two of the firearms found in BMW*

Despite having been arrested for the drugs and guns, Cervantes continued to work for Gill's drug distribution operation. Following significant investigation, FBI agents obtained a wiretap order in November 2022 for several phones, including ones used by Gill to further criminal activity. Cervantes was overheard talking to Gill regarding drug trafficking. For example, on November 27, 2022, Gill called Cervantes and told him to put "20 blues in a bag" and drop it off with a drug customer before heading to "the woods." As Cervantes knew, "20 blues" referred to 20,000 pills laced with fentanyl. Cervantes was surveilled travelling to meet with co-defendant Slocumb, then driving together to a parking garage where they sold the narcotics to an unidentified individual. (Plea Agreement ¶ 8.c.; PSR ¶ 41.)

Later that day, Cervantes drove to secluded residence in Shelton, Washington, belonging to co-defendant Warren (the location of Gill's apparent reference to "the woods"). Cervantes and the co-defendants used this residence as a stash house to store drugs, money, and guns in furtherance of the conspiracy. They also used the stash house to process tens of thousands of fentanyl pills from component chemicals using two pill presses found at the location. In a recorded call from that day, Slocumb told Gill that he and Cervantes needed masks and gloves to process the fentanyl. Slocumb confirmed that

United States' Sentencing Memorandum - 4
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

he and Cervantes had "24 left" (after the drug deal they conducted earlier that day), and Gill said that there should be ten thousand pills in each bag and asked Slocumb to set aside 40,000 pills in a bag for him. (Plea Agreement ¶ 8.d.; PSR ¶ 42.)

On December 9, 2022, agents executed a search warrant on the stash house. Inside, they found approximately 64 kilograms of fentanyl pills, amounting to approximately 640,000 pills (pictured below).



Agents also recovered approximately 15.6 kilograms of methamphetamine and a kilogram of fentanyl powder from the stash house. (Plea Agreement ¶ 8.e.; PSR ¶ 43.)

In addition to the narcotics, agents located 23 firearms, a silencer, two pill presses, and $81,036 in cash at the stash house. Cervantes and his co-conspirators jointly possessed these items in furtherance of the conspiracy to distribute controlled substances and with the intent of selling the drugs for profit.

United States' Sentencing Memorandum - 5
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The pill presses, chemical cutting or binding agents, and much of the narcotics were located in a recreational vehicle found at the stash house property, as pictured below.



*Equipment, scale, caffeine powder, pill presses, and other pill processing evidence*



*Shotgun and bag of MSM (cutting agent)*

United States' Sentencing Memorandum - 6
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



*Ammunition*



*Blue and colored fentanyl pills*



*Narcotics and firearms recovered from Shelton stash house*

United States' Sentencing Memorandum - 7
*United States v. Cervantes*, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

On the same day that agents searched the stash house, they executed a search warrant on Cervantes's residence. Inside, they found four handguns and associated magazines and ammunition, which Cervantes possessed in furtherance of the conspiracy. Agents also seized $1,293 in cash proceeds from drug trafficking. (Plea Agreement ¶ 8.f.; PSR ¶ 44.)

In addition to trafficking drugs and possessing firearms, Cervantes executed monetary transactions as part of the conspiracy, thereby engaging in money laundering. Cervantes knowingly received from co-conspirators, via peer-to-peer payment systems, transfers of funds representing proceeds of the drug distribution conspiracy, including through CashApp, with memoranda lines intended to conceal and disguise the nature and source of the funds. Mr. Cervantes received several CashApp transfers from Family Ties Enterprise LLC, doing business as Kash Flo Kennels, which he knew to be a company formed, at least in part, to conceal proceeds of the drug distribution conspiracy. (Plea Agreement ¶ 8.g.; PSR ¶ 45.)

Even after the execution of the search warrants and the search of his residence by federal agents, Cervantes continued to assist his co-conspirators by facilitating the movement of their operations to Arizona. In particular, on January 19, 2023, Cervantes established an Arizona Corporation in the name of Kash Flo Kennels AZ LLC, the same business used to launder drug proceeds in Washington.



*Arizona Corporations Commission online public records search results for Kash Flo Kennels*

United States' Sentencing Memorandum - 8
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

B.  **Procedural History**

Cervantes was indicted by a grand jury on March 16, 2023, and was arrested and made his initial appearance on March 22, 2023. On February 21, 2024, Cervantes entered a plea of guilty to a lesser-included offense in Count 1 of the Indictment (Conspiracy to Distribute Controlled Substances). (Dkt. 697.)

## II.     BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id.* at 50.

United States' Sentencing Memorandum - 9
*United States v. Cervantes*, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### III. SENTENCING GUIDELINES CALCULATIONS

**A. Offense Level**

    **1. The Base Offense Level**

Cervantes engaged in the distribution of kilogram quantities of fentanyl and methamphetamine. During the service of the search warrant at that stash house alone, agents located massive amounts of deadly narcotics, including approximately 640,000 fentanyl pills disguised as prescription Oxycodone, as well as over 15 kilograms of methamphetamine, a kilogram of fentanyl powder that had not yet been pressed into pills, and heroin. This quantity of drugs alone triggers the imposition of the highest base offense level under the Drug Quantity Table of USSG § 2D1.1. These totals likely drastically undercount the quantity of methamphetamine that were within the scope of the criminal conspiracy, which spanned years. In any event, the base offense level is 38 pursuant to USSG § 2D1.1(c)(1)). (Plea Agreement ¶ 9.a.; PSR ¶ 50.)

    **2. Adjustments**

As agreed by the parties, a two-level enhancement applies because Cervantes possessed firearms, pursuant to USSG § 2D1.1(b)(1). (Plea Agreement ¶ 9.b.; PSR ¶ 51.) Specifically, law enforcement recovered 23 firearms and a silencer from the stash house, four firearms from the search of the vehicle Cervantes was stopped in while transporting narcotics through Oregon, and four handguns from Cervantes's residence. (PSR ¶ 51.)

Further, the parties agree that the defendant represented or marketed as a legitimately manufactured drug a substance containing fentanyl and acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug. Cervantes distributed pills marked with an "M30" insignia. The pills contained fentanyl and were designed to mimic prescription OxyContin pills. Therefore, the two-level enhancement pursuant to USSG § 2D1.1(b)(13) applies. (Plea Agreement ¶ 9.c.; PSR ¶ 52.)

//

United States' Sentencing Memorandum - 10
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 3. Acceptance of Responsibility

The government moves for the three-level decrease available under USSG §§ 3E1.1(a) and (b), because the defendant has assisted the United States by timely notifying it of his intention to plead guilty. (*See* Plea Agreement ¶ 10; PSR ¶¶ 57-58.)

## B. Criminal History Category

Defendant has no criminal convictions, and his criminal history category is I. (PSR ¶¶ 60-63.)

## C. Guidelines Range

The total offense level is 39. (PSR ¶ 59.) This results in a guidelines imprisonment range of 262 to 327 months. (USSG Chapter 5, Part A (Sentencing Table).)

## II. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence the defendant to 120 months of imprisonment, followed by a four-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence, and importantly, nothing about the offense justifies a sentence below the guidelines range as recommended by defendant and the Probation Office.

## A. Nature and Circumstances, and Seriousness of the Offense

Drugs like the fentanyl and methamphetamine that Cervantes distributed have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities.

United States' Sentencing Memorandum - 11
*United States v. Cervantes*, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs defendant and co-defendants distributed is difficult to quantify, it is undeniably extensive based on the hundreds of pounds of fentanyl and methamphetamine that he was involved in distributing. The drugs defendant and his co-defendants spread through the community undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Cervantes himself felt the impact of drug addiction on his life and the lives of his family members. According to the Probation Office, Cervantes's mother was addicted to methamphetamine, a fact which he cites as mitigating. Nevertheless, Cervantes turned to drug dealing, enabling precisely the destructive addictions in others that he had experienced in his family.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the counterfeit oxycodone pills they are taking contain fentanyl, their lives are put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state.

To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a small decrease in overdose deaths nationwide, Washington had an increase in overdose deaths of over 27% in the year ending December 2023. *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at: https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed September 6, 2024). The scale of the problem is massive, with the CDC estimating that 3,596 people died of drug overdoses in

United States' Sentencing Memorandum - 12
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Washington state in the 12-month period ending March 2024, a 19% increase from the prior year. This is one of the largest increases of any state in the nation, as illustrated by the graphic published by the CDC, below:



National Center for Health Statistics, *Provisional Drug Overdose Death Counts*, available at: https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm#notes (last accessed September 6, 2024).

**B.     History and Characteristics of the Defendant**

Cervantes has a history of drug abuse as documented in PSR. His childhood reportedly involved neglect and abuse, and he reportedly suffers from mental health issues (depression, anxiety, and PTSD) that are not uncommon in individuals involved in drug trafficking. A variance from the guideline sentencing range as recommended by the government accounts for these facts.

//

United States' Sentencing Memorandum - 13
*United States v. Cervantes*, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**C.      Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Further Crimes**

The government's recommended sentence would reflect the seriousness of the offense, appropriately promote respect for the law, protect the community. The sentence would provide needed deterrence for defendant, but would also meet the goal of general deterrence, sending the appropriate message to those who would engage in drug dealing only to use the drug addiction that they enable and profit from as a mitigating factor for their own conduct. Such conduct is not acceptable: the severity of drug trafficking is illustrated by, not diminished by, the detrimental effects that addiction has on individuals.

Particularly where the offense involves extremely large amounts of deadly drugs, as this one does, a sentence that signals the severity of the offense is necessary to promote respect for the law and dissuade others from seeking to massively profit from the addictions of others. The Section 3553(a) factors call for a significant sentence in this case.

**D.      Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

While a variance from the low end of the guidelines range is appropriate to account for Cervantes's background and culpability in this case relative to the leaders of the conspiracy, the government's recommended sentence properly reflects the seriousness of the offense and the need to promote respect for the law, protect the community, and deter defendant and others who would seek to emulate his conduct. Anchoring the sentence in the guidelines calculations has the added benefit of avoiding unwarranted sentencing disparities among similarly situated defendants. *Gall v. United States*, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

//

//

United States' Sentencing Memorandum - 14  
*United States v. Cervantes*, CR23-5085-DGE-13

UNITED STATES ATTORNEY  
1201 PACIFIC AVE., SUITE 700  
TACOMA, WASHINGTON 98402  
(253) 428-3800

## III. CONCLUSION

For all of the reasons set forth above, the governments respectfully recommends the Court impose a custodial sentence of 120 months, to be followed by a four-year term of supervised release, and a $100 special assessment.

DATED this 6th day of September, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

 /s/ Max B. Shiner
MAX B. SHINER
ZACHARY W. DILLON
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3822
Fax: 253-428-3826
Email: max.shiner@usdoj.gov

United States' Sentencing Memorandum - 15
United States v. Cervantes, CR23-5085-DGE-13

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800